For our final case today and it's Goldman Sachs&Co et al. v. Athena Venture Partners LP number 13-3461. Is it Posner or Posner? Posner. Posner, okay. And Mr. Moffitt. And then Mr. Moffitt, if we could have you come on up first. Thank you, Your Honors. David Moffitt, Saul Jung, LLP, on behalf of the Appellee Athena Venture Partners LP. I mean, the problem and the reason we had you come on up. You've got, and maybe if you're a judge, the blink response is, you know, if we have a decision and one of us dies before that decision comes out, there's a federal statute that says, you know, if the other two agree, you don't have to reconvene the panel. Here's a case where the two arbitrators, the persons on the panel, regardless of what happened with this attorney who didn't disclose everything that he should have disclosed, they're in agreement. And as a practical matter, just looking at it realistically, how is this going to make any difference? Well, I think the argument is that the agreement to arbitrate between the parties provided for a panel of three arbitrators, and that in order for the conditions of that agreement to be met, there had to be three arbitrators participating. Normally what happens here is it provides for a panel of three, and one of them passes away before the opinion comes out, and the other two are in complete agreement. Well, in that case, even under the, well, there are two reasons why you simply ignore, would not ignore the agreement. First is the case that we cited from the 11th Circuit, Sutz, which provided for the remand of the case for an entirely new arbitration proceeding because one of the three arbitrators was unable to continue to participate. But the reason for three is to avoid, to have a majority, to have a decision. But if two of them agree, let's see what's the harm. As Judge Ambrose said, as a practical matter, you've got two that agree. Well, the appellee here, Athena, which was the customer, was entitled to a public arbitrator on that panel. That's specific in the arbitrator agreement. The public arbitrator here, Mr. Timban, is the one who defected from the panel effectively before the deliberations and award had been rendered. Now, our position is that pursuant to the agreement, Athena was entitled to the benefit of that public arbitrator viewing the evidence, bringing forth his conclusions and opinions as how to evaluate the evidence to the entire panel. It's no different than any other method of resolving disputes where you are, where a certain quorum is dictated and the quorum is not met. Here, in particular, the prejudice is that the public arbitrator was not part of the proceeding. He should have been. The other basis here for the argument is FINRA's own rule. When an arbitrator can no longer perform his duties, FINRA is to replace the arbitrator. Beforehand, that's the case. This case seems quite a bit like the Fifth Circuit case in Falco, which you had three arbitrators and one of them had to be non-public and it appears that one of the three was not non-public and the court said, so what, in effect? Why is that not even, it seems like a better fact pattern than what you've got here because there was a reason that you wanted one of the arbitrators to be non-public for ostensibly a reason and here you had three arbitrators and what happened is Mr. Timberden, you know, he disclosed some things with respect to New Jersey, he didn't disclose Michigan and should have. Had this all been done before, he would have been disqualified, but where is there any thought, any evidence, any concept that maybe he tainted the process in such a way that the other two were influenced because of what he did? There's no conflict here. Your Honor, I haven't presented that evidence or argued that and that's not our argument. The argument is the agreement requires three arbitrators and that means for all aspects of the proceeding. On that point, how do you know you didn't have three arbitrators? Well, for a couple of reasons. You said that your point about having this arbitrator somewhat painted, but how do you know they didn't go through the deliberations and render a decision? Three of them. Well, there's strong circumstantial evidence that that did not happen and it's based on one, this gentleman, Mr. Timban, was suspended from the practice of law in any form and that was a suspension that was- Was that before or subsequent to the arbitrate, the panel's decision? That was well before. That was within, I think, 17 days of the submission of posturing briefs. Did this panel have to be three attorneys? It did not. I mean, it seems as if the arbitrator disqualification criteria, which is one of the things I think you're relying on, it looks to me like it's an internal guideline directed only to arbitrators. I mean, the document itself is in one section of FINRA's website that's directed only to arbitrators and it's listed under the title, Top Ten Ways to Be a Better Arbitrator. It doesn't sound like it means that, hey, if you violate that necessarily, you have so tainted the process that we have to go back to the beginning. You have to go back to square one. I would respectfully disagree, Your Honor. It's not just a precatory website item that suggests how to do better as an arbitrator. These are fundamental requirements, and they go to the issue of the qualification of the individual to perform duties as an arbitrator. And it goes to very basic qualifications, such as the fact that you've not been suspended from the practice of law or that you're not under investigation or the subject of a disciplinary proceeding by a professional organization. These are fundamental basic requirements that sort of set a threshold. But the fundamental is probably the right word, and if you make it an adverb, 10A3 talks about a fundamentally fair hearing. It's something denying to your clients a fundamentally fair hearing, and usually it's somebody has a conflict or they've done something by way of taking a bribe, whatever it might be, but there's no allegation of any of that here. How were you denied a fundamentally fair hearing in terms of these arbitrators? We have not made the case that this arbitrator improperly influenced the others  We did not have the benefit of a full panel of three arbitrators. We did not have the benefit of a public arbitrator. And probably a bad analogy, but if you're supposed to have a jury of 12 and you get a jury of 11, that's a mistrial. And this is similar to that. There are certain procedural requirements that you bargain for in your arbitration agreement. This arbitration agreement specifically refers to the participation on the panel of a majority of public arbitrators. One problem that I see is that you made your objection after the panel had rendered its decision and two of the arbitrators signed off on the decision. So you run into a whole lot of cases that really take a dim view of this type of procedure because you, you know, the criticism is you lay in wait, you know that there's bad stuff out there. You might have even done research and found that he had done other things and had been subject to other bar association problems. But then you get an adverse decision and now you come out and you complain. Now, if you had gotten a positive decision, you might have been quite conducive. Now, I understand, and my opponent has made the argument that I was laying in wait for this and knew all about it all along. I can only assure the panel that I did not. Should I have taken the disclosure that this gentleman had inadvertently forgotten to make a Pro Hoc Vitae admission motion, which resulted in proceedings against him in New Jersey as a sign for the fact that he was a thoroughly corrupt individual who had stolen money from or written bad checks, who had lied repeatedly on the disclosure forms? Maybe I should have. Was I able to anticipate when that inadequate disclosure was made that more stuff was going to occur between the time that he made that inadequate disclosure and the ultimate decision to wit, the suspension of this gentleman from the practice of law, et cetera, et cetera? None of that could have been anticipated. There is nothing in that initial. But the events are public in nature, aren't they? In other words, were they not ascertainable by some? Not at the time, not in March of 2012. There were private, confidential proceedings prior to the issuance of a formal complaint in the State of Michigan. That was not the publication of a decision or a formal complaint. It would have been available in July of 2012. Now, I could have checked. The final decision was in March of 2013, if I'm not mistaken. You're right. A year before that. And as far as, well, the fact of the matter is we had a, we went to an arbitration hearing in November of 2012. It was days, it was literally days after this panelist had agreed to a stipulation that would suspend him from the practice of law. At that point in time, there were seven days of additional hearings. At that point in time, this gentleman knew that he was permanently, was going to be permanently disqualified as a result of that proceeding and that he was temporarily disqualified and that he knew that he had an ongoing obligation to supplement his disclosures. I could understand your point, and I do, and it has a great deal of credence to it, because he should have said more. He should have. He should have. He should have, but here's my other point. Shouldn't you have done more? I don't think that a reasonable person could have foreseen a couple of things, Your Honor. First of all, that this, that the disclosure that was provided would necessarily suggest that this guy would also have passed bad checks, which would have resulted in him being disciplined in Michigan. I don't think I could have foreseen that this individual would have removed himself from the proceeding and the deliberations at some unknown time. Now, there is a question of fact with respect to where did he go, what happened. I look at the timing of what happened, and I see a very strong inference that he removed himself because he didn't want to have anything more to do with this proceeding, having failed to disclose all this bad stuff. We don't know for sure if he participated in deliberations or not. We don't. All we know, as counsel has pointed out, is that he sat at the table after the hearing when the parties weren't present, but that was weeks before the submission of post-hearing briefs. There's no evidence that he did participate, and there's compelling evidence that he did not because he didn't sign the award. And the suggestion here is that Mr. Timban agreed with the award. If he agreed with the award, why didn't he sign the award? It's all just – He's not required to sign it, is he? Pardon me? He's not required to sign the award. All you need is two signatures. Why wouldn't, Your Honor, why wouldn't he have signed it if he agreed with it and he was still participating? It just doesn't make any sense. It might seem that the argument would be more your way if he did participate in the discussion, did attempt to influence his co-panelists, and then ultimately backed out because things were caving in on him in Michigan, New Jersey, et cetera. But it looks like he may not have done that. He may just have backed away. It's like recusal, if you will. I think that one of your options is to remand this matter and have us find out. Is your point about a – did you say non-public? I may have misspoken. This gentleman was a public arbitrator. Public arbitrator, and you say you're entitled to a public arbitrator? Yes. But you're entitled to a public arbitrator in the appointment process, I assume, right? I mean, there's no guarantee of a public arbitrator in the deliberation process. I don't see the distinction, Your Honor, respectfully, because you're the most important part of the entire proceeding. You can listen to the evidence. If you have nothing to do with the deliberations, what's the point? Well, because the rules seem to focus on, on the one hand, appointment of arbitrators, and on the other, the removal of arbitrators, and they're very different. They get a lot more stringent once you get beyond the appointment process. And I'm just asking you. No, I understand the distinction. Is your entitlement to the appointment of a certain type of arbitrator, and that's it, but not necessarily one that participates in the decision? Am I cutting it too finely?  Yes. And the point is that because of his self-removal from the process, we didn't get it. And in that, when he self-removed, frankly, FINRA appears to not know what to do. FINRA, I believe, I believe, I don't know, I haven't proposed to FINRA, but I believe that FINRA elected to rely on the fact that, well, two arbitrators can make a decision. And why don't we just allow this decision to go forward? It's been done in the past. Did you file a complaint with FINRA regarding this matter? A complaint against FINRA with respect to the case? No, with FINRA, a complaint with FINRA. You mean, did we? Did you complain? I mean, is there a process by which you say, well, it's unfair, and maybe you should speak out about it? This is the process, Your Honor. We move to vacate. I think that was our only ability to complain of what happened. Okay. Thank you. Thank you. Thank you. Thank you. May it please the Court, I am Edward Posner. I represent Goldman Sachs, Scott Sheffer, and Eric Gettleman. Let me respond to both the defection point and the point that Judge Fuentes raised about the difference between initial qualifications and removal. First of all, why did Mr. Timban sign the award? Do you know why? I do not know why. We don't know why. I mean, I guess FINRA rules seem to allow for it, but it doesn't seem very common. I don't know how common it is. FINRA rules explicitly allow for it. Counselor, would you pull that microphone a little closer to you? I'm having some difficulty hearing you. I'm sorry, Your Honor. FINRA rules explicitly allow an award to be signed by two arbitrators, and the parties' agreement allowed the case to be decided by two arbitrators, by a majority of the arbitrators. Does that mean if there's a disqualification on the part of any arbitrator that you can just go ahead with the two? No. It's important to distinguish, as Your Honor was suggesting, between what are called the disqualification criteria, but actually are criteria that are applied in the initial appointment process, in the selection process, and the arbitrator removal rules, on the other hand. The scheme is that there are criteria set up by FINRA for the selection of arbitrators, which require various kinds of disclosures. But once the arbitrators are selected, the disclosure rule is much narrower, 12405, and the basis for removal is quite narrow. An arbitrator may be removed only for bias or lack of impartiality or an interest in the outcome of the proceeding. And historically, interestingly enough, the rules didn't allow any removal of an arbitrator, even for cause. It wasn't until 2001 that FINRA amended the rules with the approval of the SEC, or the NASD amended the rules, and arbitrators could then be removed if there was a question about their impartiality or essentially the fundamental fairness of the proceeding. What if a potential arbitrator misrepresents something in the application process, like I've never been suspended or disbarred in any state, but that's not true, gets appointed anyway, that arbitrator be removed, is removable? That arbitrator is not removable after he's been appointed, although there may be grounds for moving to vacate. Why is that? You put the burden on the parties to do the investigation, or should the burden be on the potential candidate to be truthful in all disclosures? Well, obviously the candidate should be truthful in disclosures. When we're talking about vacature of an arbitration word, however, there are a number of courts, including this one in a non-presidential opinion, that put the burden on the party to investigate. The Stone case does that. The Merritt v. Leatherby case by Judge Posner does that. And so does Rennie in the Fourth Circuit. I think this is a roundabout way of getting to I think what was your argument, that there's a requirement of due diligence on the part of all parties from the beginning through the entire process. There could be a requirement of due diligence. Our argument is really a notice inquiry, an inquiry notice argument, saying that Athena was on notice. It knew because of the disclosure that Mr. Tinban had engaged in the unauthorized practice of law. It knew that he had reported that to the two state bars in which he was licensed, and that he might be disciplined, but he chose to do nothing. It chose to wait and see what happened. If it was concerned about the extent of the malpractice or whether in fact there would be bar discipline, it could have asked. It could have asked Mr. Tinban. It could have asked FINRA. It could have gone on the Internet. If it had gone on the Internet for a minute on Google, it would have discovered all of the facts about the unauthorized practice that it now claims were concealed. There were articles in the newspaper. There was an article in the ABA Journal about the indictment of Mr. Tinban, which talked about him having business cards. Was the ABA Journal article prior to the arbitration hearing? The ABA Journal article was, I think, prior to the arbitration hearing. I'm sure it was. Well, it was about the time of the first hearing. It was certainly prior to Mr. Tinban's disclosure. So if it was prior to the arbitration, then wouldn't the FINRA rules kick in then to say that this person can't be on the arbitration panel? No. And the reason is that FINRA talks about the removal rules coming into effect not when the evidentiary hearings start but when the panel first meets. So when there is a pretrial conference or a conference about discovery, that's the first hearing within the meaning of the rules. Arbitrators are in panel based on their voluntary statements. Is that the way it works? Voluntary statements which are supplied to the parties who can do whatever investigation they wish. So the onus is on the parties to check out the arbitrators? To check out what they care about, yes. The premise of the argument here seems to be that it matters. It makes a big difference whether there was one incident of unauthorized practice or several. I'm not clear on why that is, but it was certainly discoverable, and in fact there was notice and should have been some investigation sooner than there was. That article in the APA Journal referenced his unauthorized practice of law in Mount Holly, New Jersey, which he then reported to Michigan. Yes. So he was disbarred in Michigan. Is that what the article was about? He was suspended. That's exactly what it was about. It was about him being arrested. That happened in the midst of the? It happened in the midst of the arbitration, but just before the first set of evidentiary hearings. What we're thinking about is what's the right standard? How should we approach this? Should we look at the rules and say let's put the burden on the parties to do their investigation? The parties here did not do that. Had they done it, they would have learned certain information. Therefore, there was nothing wrong with the arbitration process, and the district judge was wrong. Is that what you would have us rule in the case? No. I would have the court enforce the parties' agreement. The parties' agreement was that the arbitration would be before a panel of three arbitrators, and it was, and that the arbitration would be conducted in accordance with FINRA rules, which it was. The parties expressly agreed to a two out of three result, and they agreed when agreeing to the FINRA rules to this distinction between initial qualification for purposes of selection, and there's no question here about his qualification at the time of selection. Your view is no rules were broken? No rules were broken here. In fact, there was no disclosure that wasn't made that was required by the rules. Rule 120405 and all of the rules, the removal rules, refer only to matters that might affect or have a bearing on the arbitrator's impartiality and objectivity. They do not require disclosure of anything else after the arbitrators are seated, and they do not require removal. They do not permit removal in those circumstances. Judge Nygaard, do you have any questions? I have none. No. Thank you. Thank you. Mr. Moffitt, we'll give you two minutes since we switched things around. Thank you, Your Honors. I think that the suggestion that the only basis for removal is within the narrow scope of nondisclosures of partiality, of prejudices, misconstrues our argument. Our argument is first that Judge Joyner got it right and that this entire process was corrupted by the repeated misrepresentations and failures to disclose and concealments of Mr. Timbon, which ultimately resulted in him taking away a fundamental component of what the parties bargained for, which was his participation. Isn't Mr. Posner correct about the grounds for removal of an arbitrator, which is pegged to the desire to have finality in arbitration proceedings? Well, here the arbitrator self-removed, and if there's any doubt about that, there ought to be a remand for an evidentiary proceeding on that issue. And in the case of self-removal, the arbitration rules require that FINRA select and put in place a replacement. It didn't happen. We didn't get what we bargained for, and therefore it's a defective award. That about sums it up, Your Honor. Thank you. Thank you very much. Thank you. Thank you to both counsel for well-intended arguments. We'll take the matter under advisement.